**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NORTH JERSEY MEDIA GROUP INC.,

        *Plaintiff/*
        *Counterclaim-Defendant*,

v.

FOX NEWS NETWORK, LLC,

        *Defendant/*
        *Counterclaim-Plaintiff*.

No. 14-cv-07630 (ER)

**REDACTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
FOX NEWS NETWORK, LLC'S MOTION FOR SUMMARY JUDGMENT
DISMISSING COPYRIGHT INFRINGEMENT CLAIM
<u>OF NORTH JERSEY MEDIA GROUP, INC.</u>**

Dori Ann Hanswirth
  dori.hanswirth@hoganlovells.com
Theresa House
  theresa.house@hoganlovells.com
Nathaniel S. Boyer
  nathaniel.boyer@hoganlovells.com
Benjamin A. Fleming
  benjamin.fleming@hoganlovells.com
Patsy C. Wilson
  patsy.wilson@hoganlovells.com

HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
tel: (212) 918-3000
fax: (212) 918-3100

*Attorneys for Defendant*

**(FILED UNDER SEAL)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

ARGUMENT...................................................................................2

I. Plaintiff Does Not Consider the Significant Free Speech Issues Posed in This Case ........................................................................................2

II. Plaintiff Does Not Refute Fox News' Showing That Its Use Is *De Minimis* .................2

III. Plaintiff Fails to Meaningfully Engage with *Google Books* or Fox News' Arguments.........................................................................3

    A. Plaintiff Argues the Wrong Standard on Factor Four .............................................3

        i. The Post Is Not a Satisfactory or Effectively Competing Substitute..............4

        ii. Purported Harm to Potential Meme and Social Media Markets Does Not Count........................................................................5

        iii. The Post Did Not Cause "Significant" Harm.................................7

    B. Factor 1: The "Purpose and Character" of Defendant's Use Favors Fair Use .......9

        i. It Does Not Matter that Another Fair User Created the Meme ......................9

        ii. Ricalde's Use of the Work in the Post Was Justified ..................................11

        iii. Fox News' For-Profit Status Does Not Weigh Against Fair Use.................13

    C. Factors Two and Three Also Favor Fair Use .......................................................15

CONCLUSION...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994) ............................................................................................8

*Anderson v. Liberty Lobby*,
    477 U.S. 1986 (1986) ...................................................................................................14

*Arrow Prods., Ltd. v. Weinstein*,
    44 F. Supp. 3d 359 .........................................................................................................6

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) ..................................................................................passim

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) ...........................................................................5, 6, 8, 12

*Blanch v. Koons*,
    396 F. Supp. 2d 476 (S.D.N.Y. 2005), *aff'd*, 467 F.3d 244 (2d Cir. 2006)...........................6

*Burgin v. Nat'l Football League*,
    No. 13 Civ. 8166 KBF, 2014 WL 1760112 (S.D.N.Y. Apr. 30, 2014)...................................3

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569, 579 (1994) .....................................................................................9, 11, 13

*Cariou v. Prince*,
    714 F.3d 694, 709 (2d Cir. 2013)........................................................................3, 11, 15

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998) ..........................................................................................4

*Consumers Union of United States, Inc. v. Gen. Sig. Corp.*,
    724 F.2d 1044 (2d Cir. 1983)........................................................................................13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .......................................................................................................2

*Fitzgerald v. CBS Broad., Inc.*,
    491 F. Supp. 2d 177 (D. Mass. 2007).....................................................................6, 7, 12

*Gaylord v. United States*,
    595 F.3d 1364 (Fed. Cir. 2010).....................................................................................12

*Gottlieb v. County of Orange*,
    84 F.3d 511 (2d Cir. 1996) ......................................................................................4, 14

*Hofheinz v. A & E Television Networks,*
146 F. Supp. 2d 442 (S.D.N.Y. 2001) ................................................................9

*Keeling v. Hars,*
No. 13-694-CV, 2015 WL 6600571 (2d Cir. Oct. 30, 2015) ............................8, 10

*Kelly v. Arriba Soft Corp.,*
336 F.3d 811 (9th Cir. 2003) .........................................................................4, 5

*Leibovitz v. Paramount Pictures Corp.,*
137 F.3d 109 (2d Cir. 1997) ..............................................................................13

*Mathieson v. Associated Press,*
No. 90 CIV. 6945 (LMM), 1992 WL 164447 (S.D.N.Y. June 25, 1992) ..........6, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ............................................................................................6

*On Davis v. The Gap, Inc.,*
246 F.3d 152 (2d Cir.), *as amended* (May 15, 2001) ....................................2, 14

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
602 F.3d 57 (2d Cir. 2010) ..................................................................................2

*Princeton Univ. Press v. Michigan Document Servs., Inc.,*
99 F.3d 1381 (6th Cir. 1996) .............................................................................10

*Ringgold v. Black Entm't Television, Inc.,*
126 F.3d 70 (2d Cir. 1997) ..................................................................................3

*Sandoval v. New Line Cinema Corp.,*
147 F.3d 215 (2d Cir. 1998) ................................................................................3

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417 (1984) ............................................................................................8

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,*
756 F.3d 73 (2d Cir. 2014) .....................................................................9, 10, 14

*Wade Williams Distrib., Inc. v. Am. Broad. Co., Inc.,*
No. 00-cv-5002(LMM), 2005 WL 774275 (S.D.N.Y. Apr. 5, 2005) ....................8

*Wright v. Warner Books, Inc.,*
953 F.2d 731 (2d Cir. 1991) ................................................................................5

**OTHER AUTHORITIES**

"Jon Stewart returns to 'Daily Show' to support 9/11 first responders," CBS News (Dec. 8, 2015) (*available at* http://www.cbsnews.com/news/jon-stewart-returns-to-the-daily-show-advocates-for-911-first-responders-zadroga-act/) (accessed Dec. 9, 2015).........11

http://www.northjersey.com/arts-and-entertainment/tv/record-photographer-s-iconic-9-11-image-explored-in-cnn-documentary-the-flag-1.597196 (last visited Dec. 11, 2015)........................................................................................................................5

Fox News submits this reply memorandum in further support of its Motion.[1]

## PRELIMINARY STATEMENT

This case calls for a contemporary interpretation of fair use, a doctrine that has been essential to our nation's copyright regime for centuries. Fox News' Motion—supported by new, binding court precedents, expertise in the field of digital social communications and meme culture, and the collective viewpoint of 14 leading fair use scholars—urges the Court to rule that it was fair for Katy Ricalde to use a degraded visual depiction of an historical event in a Facebook post commemorating the anniversary of September 11. Plaintiff's opposition ("Opp.") is essentially nonresponsive to Fox News' Memo and fails to analyze the context and character of Ricalde's communication. Indeed, the word "meme" is not mentioned once. Thus, Plaintiff failed to engage on the crucial topics of how memes work, why repetition is needed for meme culture to exist, and how memes are inherently transformative.

Nor did Plaintiff ever explain how any protectable elements of the original Work were even used in the Meme that Ricalde posted to Facebook along with her commentary. Instead, Plaintiff refers to the toil that Tom Franklin underwent to get to the news on September 11, 2001. But toil is not protected by copyright.

Perhaps even worse, the Opp. never even tries to analyze the important issue of market harm in light of *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015). Fox News has put forward substantial evidence of lack of cognizable market harm, such that no reasonable jury would find that Factor Four weighs in Plaintiff's favor. Combined with the social importance of remembering September 11, the freedom of everyone to refer to historical facts, and the lack of protected expression contained in the Meme, this lack of significant market harm should result in a ruling of fair use as a matter of law.

---

[1] Defined terms have the same meanings used in the memorandum of law in support of the Motion (the "Memo").

## ARGUMENT

**I.    Plaintiff Does Not Consider the Significant Free Speech Issues Posed in This Case**

Although Plaintiff's claim is based on only one posting, a tiny drop in a vast sea of social media activity, the implications of this case go much further.   Millions post memes and comments on social media every day.  (Sinnreich Decl., Ex. A, at 4-6.)  This widespread sharing and copying represent "some of the most significant ways in which ordinary people communicate online."  (Amici Br. 3.)  Even Plaintiff admits that the Post is First Amendment-protected speech.  (Opp. 5 n.1.)  Yet the result Plaintiff urges—liability for a post on a matter of public concern using a meme posted and shared at least thousands of times—would imperil the very idea of memes and substantially chill expressive conduct that millions engage in every day.

**II.   Plaintiff Does Not Refute Fox News' Showing That Its Use Is *De Minimis***

The only copying of allegedly protectable expression that Plaintiff points to is "the orientation of the firefighters and the American flag in relation to each other."  (Opp. 21.)  But it is undisputed that Franklin did *not* pose the firefighters or the flag; thus, this "expression" is really the factual subject matter—and not protectable.  (Memo 16-18.)  Franklin "getting himself into the location" (Opp. 21) does not matter; copyright law rejects the "sweat of the brow" doctrine.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359-60 (1991).  The only potentially copyrightable expression is the angle, zoom, and framing of the Work (*see* Memo 17-18)—and Plaintiff does not dispute that these elements were altered beyond recognition in the Post.[2]  Unprotectable elements are extracted in deciding whether two works are substantially similar.  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010).

*On Davis v. The Gap, Inc.*, 246 F.3d 152, 174-75 (2d Cir.), *as amended* (May 15, 2001),

---

[2] The image and scale of the wreckage—███████████████████████████████—was entirely cropped.  (Declaration of Nathaniel S. Boyer, dated Dec. 11, 2015 ("Boyer Decl."), Ex. 1, at 56:2-8, 15-22.)

and *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 77-78 (2d Cir. 1997) are inapposite—they did not involve uses that failed to copy virtually any copyrightable expression. *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217-18 (2d Cir. 1998), which dismissed the claim as *de minimis*, involved one way of showing minimal copying, but not the only way.

Plaintiff's attempt to distinguish *Burgin v. Nat'l Football League*, No. 13 Civ. 8166 KBF, 2014 WL 1760112 (S.D.N.Y. Apr. 30, 2014) does not account for the ephemeral nature of the Post. Plaintiff argues about the number of people who may have seen the Post[3] and unsupported suppositions about Fox News' business model (both irrelevant—*Sandoval* found *de minimis* copying in the wildly popular film "Seven," which was seen by millions and presumably made millions); and protests that if this Post is *de minimis*, then Facebook posts can never infringe. Fox News has never argued that all Facebook uses are *de minimis*; it is talking about this Post, which was readily visible for a short time and failed to copy almost any protectable elements.

## III.   Plaintiff Fails to Meaningfully Engage with *Google Books* or Fox News' Arguments

### A.   Plaintiff Argues the Wrong Standard on Factor Four

Because Plaintiff does not cite *Google Books* once in its discussion of Factor Four, it makes arguments like "[a] reasonable jury could find that Fox News' use of the Baier Image would have an impact on the actual market for the photograph." (Opp. 17.) But "an impact" is not the standard. Rather, the analysis "focuses on whether the copy brings to the marketplace a *competing substitute* for the original, or its derivative, so as to deprive the rights holder of *significant* revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Google Books*, 804 F.3d at 223 (emphasis added).

*Cariou v. Prince*'s statement that usurpation can be shown where the "target audience

---

[3] At the same time, Plaintiff argues that "Fox News did not expose the [Work] to a new or different audience that had not yet seen it." (Opp. 12.) This further supports a finding that the copying is *de minimis*.

and the nature of the infringing content is the same as the original" has no bearing here.   714 F.3d 694, 709 (2d Cir. 2013).   For this dictum, *Cariou* (which found no usurpation) relied on *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998), which involved a use with a "non-existent" transformative purpose that was sold expressly to "satisfy" 'between-episode [*Seinfeld*] cravings.'"   Here, the Post is not the same as the Work (*see infra* page 13), and there is no evidence of target audiences or of the Post being designed to satisfy cravings for the Work.

        i.    The Post Is Not a Satisfactory or Effectively Competing Substitute

Plaintiff admits that the Meme is not "perfect," but argues it is "adequate."   (Opp. 17-18.) "[A]dequate" substitution is not the standard.   *Google Books* states that the secondary use must be a "satisfactory," defined as "effectively competing," substitute.   *Id.* at 221, 223.

Fox News put forth affirmative evidence from Dr. Sinnreich and Dan Cohen that the Meme is not a satisfactory substitute for the Work because its degraded and altered qualities further render it unsuitable for licensed editorial uses.   (Sinnreich Decl., Ex. A; Cohen Decl. ¶ 9.) Plaintiff does not respond with competing testimony from anyone saying the opposite.[4]   Instead, it claims that "one glance" establishes that the Meme is a substitute.   (Opp. 17.)   Such a conclusory statement does not create an issue of fact.   *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("[A party opposing summary judgment] cannot defeat the motion by relying . . . on conclusory statements").   Further, Plaintiff does not dispute that in photography the quality of the reproduction "may matter more than in other fields."   *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 n.37 (9th Cir. 2003).   It also does not account at all for *Google Books*' holding

---

[4] Instead, Plaintiff cites Dr. Sinnreich's testimony that sometimes low quality photos are used.   (Counter 56.1 ¶¶ 78-79.)   This does not create a true dispute— ███████████████████████████████████████████████ (Sinnreich Decl., Ex. A; Boyer Decl., Ex. 4 at 39:8-41:7.)   Here, the Work is available, so Plaintiff's response does not contradict Fox News' evidence.

that serving as a substitute for *the factual content of the original work* (presumably all that a viewer would see by "glancing" at the Work) does not suffice. *Id*. at 223. Indeed, Plaintiff affirmatively argues that the principal "misappropriation" in the Meme was its copying of the unstaged orientation of the firefighters to the American flag, *i.e.*, its unprotectable subject matter. (Opp. 32.) Thus, even on Plaintiff's account, there was negligible copying of protectable expression, favoring fair use. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991).

Plaintiff's inexplicable argument that the alterations in the Meme somehow make it *more attractive* as a substitute flies in the face of precedent and common sense. (Opp. 18.) NJMG does not address the case law establishing, across multiple Circuit Courts of Appeal, that a poor or reduced quality version will *not* qualify as a suitable market substitute. (*See* Memo 21.)

Likewise, despite arguing that widespread use of the Meme would negatively affect the market for the Work or its derivatives (Opp. 20), Plaintiff does not even attempt to address Fox News' affirmative evidence that NJMG's editorial/commercial markets, whatever their scope, are *wholly unaffected* by the fact that social media—and indeed, the internet as a whole—are saturated with even unmodified versions of the Work.[5] Plaintiff also does not dispute that NJMG has never taken steps to remove the Work from Google searches (Counter 56.1 ¶¶ 92–93), █████

████████████████████████████████████████████████████████████████████████

███████████████████████████ (*id*. ¶ 84). (*See* Memo 22-23.)

ii.   Purported Harm to Potential Meme and Social Media Markets Does Not Count

NJMG's arguments that the Post harms potential markets should be rejected. It is premised on harm to transformative markets, which does not count. *Bill Graham Archives v.*

---

[5] In the Counter 56.1, Plaintiff's only response is that there are two websites on the internet where the Work does not currently appear—FoxNews.com and www.northjersey.com. (Counter 56.1 ¶ 52.) This does not dispute the fact that the Work is saturated on the internet. And, as might be expected, the Work does appear on Plaintiff's website, in many locations. *See*, *e.g.*, http://www.northjersey.com/arts-and-entertainment/tv/record-photographer-s-iconic-9-11-image-explored-in-cnn-documentary-the-flag-1.597196 (last visited Dec. 11, 2015).

*Dorling Kindersley Ltd.*, 448 F.3d 605, 614-15 (2d Cir. 2006); *Arrow Prods., Ltd. v. Weinstein*, 44 F. Supp. 3d 359, 372 (S.D.N.Y. 2014). Memes as a genre are "inherently transformative," as unanswered expert testimony demonstrates. (Counter 56.1 ¶ 49.[6]) Commentary is also a transformative market. *See Bill Graham*, 448 F.3d at 614-15. Further, the evidence of a purported potential market on social media is too speculative. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (for a dispute to be genuine, there must be more than "metaphysical doubt"). There have been zero licenses for social media—strong evidence that NJMG has not sought, *or reasonably been able to*, obtain or capture this market. *See Blanch v. Koons*, 396 F. Supp. 2d 476, 482 (S.D.N.Y. 2005), *aff'd*, 467 F.3d 244 (2d Cir. 2006).

To argue that a market for social media uses could develop in the future, NJMG points to social media licensing for another photo. That is not sufficient. *Mathieson v. Associated Press*, No. 90 CIV. 6945 (LMM), 1992 WL 164447, at *9 (S.D.N.Y. June 25, 1992) ("Plaintiff's speculative claims as to the booming market for photos of Oliver North is unconvincing on the issue of whether news organizations are likely to pirate *the particular photo* which appeared in the AP cover photo."). Plaintiff also cites Getty's licensing of the Work ████████ on the internet—████████████████████—but none was for social media. (Opp. 17-18; Dunnegan Decl., Ex. L.) NJMG then points to settlements for social media uses, citing *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177 (D. Mass. 2007), but Plaintiff does not even attempt to address Fox News' showing that *Fitzgerald* is not instructive on this factor in the Second Circuit. (Memo 21 n.7.) Further, *Fitzgerald* is distinguishable because the settlement

---

[6] Plaintiff purports to dispute Dr. Sinnreich's expert opinion. But it does not cite any record evidence to do so; rather, it sets forth legal argument that fair use is a case-by-case analysis and therefore some memes are not transformative. (Counter 56.1 ¶ 49.) Of course, the determination that a particular meme is transformative requires a case-by-case analysis. But that does not refute expert testimony that memes as a genre are inherently transformative. *See Bill Graham*, 448 F.3d at 614-15 (finding that historical coffee table book represented a "transformative market" even though whether a particular book was transformative required case-by-case analysis).

payments there were only *part* of the revenue used to show a market for the use in question. 491 F. Supp. 2d at 188. By contrast, here, the $32,000 in settlement payments comprises *100 percent of the revenue* attributed to social media, because NJMG has *never* licensed the Work for use on social media. (Hanswirth Decl., Ex. 26.) Thus, the settlement payments are not evidence of a market for social media, but rather of NJMG's trolling behavior. (Sinnreich Decl., Ex. A, at 3-4.) What's more, *Google Books* instructs that settlements do not suffice to show market harm. *See* 804 F.3d at 226 (proposed settlement *in that case* did not show market harm).

Plaintiff does not meaningfully refute that its trolling behavior has torpedoed any potential social media market. It claims that ████████████████████████ was designed to "maximize long-term revenue," but ████████████████████████████████ ██████ (Opp. 19; Counter 56.1 ¶¶ 96-100.) Maximizing revenue by electing to capitalize on litigation revenue at the expense of engaging in a licensing market is not a choice that the Copyright Act should protect. NJMG also admits that it cancelled its AP agreement because AP's practice of allowing easy licensing of the Work was inconsistent with NJMG's goal of maximizing litigation revenue.[7] (Opp. 19.) Finally, Plaintiff argues that Getty has expertise in setting prices (*Id*. 19-20), but this only concedes that even expert price-setters could not successfully create a market for the Work on social media—added confirmation that such a market is not viable.

   iii.   The Post Did Not Cause "Significant" Harm

Even if potential future meme or social media markets were non-transformative and supported with non-speculative evidence (which they are neither), there is still no "significant"

---

[7] ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████

harm to those markets, as required by *Google Books*.  804 F.3d at 221, 223-24.

Plaintiff's contention that the use harms its purported right to control "derivatives" makes no sense.  A copyright owner's right to control derivatives is limited by fair use.  *See Keeling v. Hars*, No. 13-694-CV, 2015 WL 6600571, at *4-*6 (2d Cir. Oct. 30, 2015).  Thus, even if a secondary work qualifies as a "derivative" work, it can still be a protected fair use.  *Id*.

Plaintiff's evidence of market harm is simply too meager to move this "weighty . . . factor" against fair use.  *Google Books*, 804 F.3d at 224.  Plaintiff essentially points to only one example, ████████████████ as purported evidence of a market for derivatives of the Work on social media.  But "a publisher's willingness to pay license fees for reproduction of images does not establish that the publisher may not, in the alternative, make fair use of those images."  *Bill Graham*, 448 F.3d at 615.  Furthermore, ███████████████ is not nearly sufficient to warrant restriction of Fox News' speech.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 941 n.18 (2d Cir. 1994) (explaining that *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450-51 (1984) "implicitly ruled that the potential market in licensing royalties" from persons who "would be willing to pay some kind of royalty" for the "privilege of watching copyrighted work at their convenience" was "considered *too insubstantial* to tilt the fourth fair use factor in favor of the copyright holder.") (emphasis added);  *Wade Williams Distrib., Inc. v. Am. Broad. Co., Inc.*, No. 00-cv-5002(LMM), 2005 WL 774275, at *11 (S.D.N.Y. Apr. 5, 2005) (evidence of 12 total licenses for clips of films over the last 11 years did show a "small market" for film clips, but was not sufficient to weigh against fair use).

Finally, as set forth in the Memo (27-28) (and not disputed by Plaintiff), the public value from the Post, including speaking on a matter of public concern, advancing culture, facilitating social interchange, and explaining a significant historical event, far outweighs any alleged harm.

**B.      Factor 1:  The "Purpose and Character" of Defendant's Use Favors Fair Use**

  i.      It Does Not Matter that Another Fair User Created the Meme

It is not "potentially dispositive" that Fox News used a pre-existing Meme.   (Opp. 6 (citing no authority).)   *Campbell v. Acuff-Rose Music, Inc.* does not require creation of "new content"; it says that "new expression, meaning, or message" are all transformative.   510 U.S. 569, 579 (1994).   New meanings and messages do not require altering content.   *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014).   Ricalde created new expression in her written commentary about the sacrifices of first responders, as well as by using the Meme as a symbolic act of commemoration.

Furthermore, no court has *ever* held that a defendant's copying of an intervening secondary use weighs *against* fair use.   To the contrary, in *Hofheinz v. A & E Television Networks*, 146 F. Supp. 2d 442, 444 (S.D.N.Y. 2001), the defendant copied a movie trailer with out-of-sequence clips from a movie.   The plaintiff owned the movie's copyrights, but not the trailer's, and the defendant had no role in creating the trailer.   *Id.*   The Court found that the defendant's use was transformative, and the fact that defendant was not responsible for the alterations in the trailer played no role in its analysis.   *Id.* at 446-47.   Similarly, in *Mathieson*, the defendant published a picture of a sales brochure whose cover contained two of plaintiff's photographs.   1992 WL 164447.   The fact that the defendant did not create the sales brochure did not make the defendant's tertiary use of the plaintiff's images any less valid under Factor One.

Plaintiff's proposed rule is untenable.   Factor One examines the character of the allegedly infringing use as compared to the *original* work.   *See, e.g.*, *Campbell,* 510 U.S. at 579 (asking whether "the new work merely *'supersede[s] the objects' of the original creation*, or instead adds something new . . . *altering the first* with new expression, meaning, or message") (emphasis added) (citation omitted).   Plaintiff's position compares Fox News' use not to the original, but to

intervening works.  Second, as explained by the Amici Brief, Plaintiff's rule poses significant free speech problems—it would require the Court to make value judgments on defendants' expressive decisions about what to publish and hold that views like Fox News' expressed here were less protected because other people had the same or a similar view.[8]  Third, Plaintiff does not own the changes in the Meme, the secondary user does—thus Plaintiff cannot use those changes as a sword against Fox News.  *See Keeling*, 2015 WL 6600571, at *6.

Perhaps most significantly, Plaintiff's proposed rule is untenable because it amounts to a *per se* rule that memes are not transformative.  Memes, however, cannot function without wide-scale copying of secondary uses—without such copying, an image could not achieve meme status.  (Memo 31 n.12.)  The Second Circuit has held that where the nature of the secondary use requires unaltered copying, fair use will permit the defendant to faithfully reproduce a work without alteration.  *See Swatch*, 756 F.3d at 84.  If copyright law can regard unaltered copying of an *original* work to be no impediment to fair use, it makes no sense to adopt a rule that weighs copying of an altered *secondary* work against fair use, simply because the defendant did not make additional changes to the secondary work.  Plaintiff's argument that the Meme was used to "avoid the drudgery of working up something fresh" (Opp. 2) has no bearing here, as it also ignores the fact that memes "would not otherwise be possible but for massive unauthorized copying" (Memo 31 n.12), and Plaintiff's interpretation of it is at odds with *Swatch*'s protection for unaltered copying where the nature of the use requires a faithful reproduction.

---

[8] Plaintiff's only argument in response to the Amici is to cite *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1996).  (Opp. 5 n.1.)  But Plaintiff's quotation from that out-of-Circuit case concerned the issue of whether the defendant's use was commercial, not whether it was transformative.  Whether an alleged infringer can stand in the shoes of its customers' not-for-profit use, for purposes of determining if the alleged infringer's copying was commercial, is a very different question from whether a tertiary user should be able to rely on the alterations to a work made by someone else, for purposes of determining whether the tertiary use was transformative.  After all, what a customer does after the fact will not alter the commerciality of the use of the alleged infringer.  But alterations made by a secondary user can and do contribute to the tertiary user's transformative purpose.

ii.   Ricalde's Use of the Work in the Post Was Justified

Plaintiff claims that Ricalde's use can only be fair if there is "extraordinary" justification. (Opp. 1.)  Not so.  Even if copying "for the purpose of making points that have no bearing on the original," *Google Books* only requires "*a* justification."  804 F.3d at 215. (emphasis added)

***The Post's commentary provides justification***.  Plaintiff first argues that the Post is not transformative because "the alteration . . . does not change its meaning." (Opp. 10.)   This conflates changes in *meaning* with changes in *visual appearance*, discussed *infra* 12-13. Plaintiff next argues that Fox News' commentary is not substantial, but fails to address why the cases involving "insubstantial" commentary do not apply here (*see* Memo 31 n.11), or respond to the showing that all that is required is that the commentary be reasonably perceptible (*id.* 31-32).

Plaintiff's argument is premised on the fallacy that the only comment was the "non-copyrightable phrase" "never forget," which Plaintiff regards to be a platitude.  (Opp. 11.)  But this completely ignores the fact that Post also contained substantial written textual commentary authored by Ricalde[9] and was also a symbolic act of commemorating 9/11, made in the context of a debate about whether continuing to commemorate 9/11 is appropriate.  (Memo 9-10, 30-31.) Indeed, just this week, comedian Jon Stewart made his first-ever guest appearance on *The Daily Show*, which he used to chastise Congress's failure to fund healthcare benefits for 9/11 first responders—a compelling example of why, even in 2015, reminding the American public *not* to forget the sacrifices depicted in the Meme is not a platitude, but a moral necessity.[10]

---

[9] As expected, Plaintiff disingenuously argues that Ricalde did not comment on the Work.  The Memo explains why this is not accurate, and legally irrelevant, but Plaintiff does not respond.  (Memo 29 n.9.)  Even if her comment on the Work is debated, Ricalde's use surely altered the original with new expression, meaning, and message, which is sufficient to transform it.  *Cariou*, 714 F.3d at 706 ("The law imposes no requirement that a work comment on the original or its author in order to be considered transformative. . . . Instead, . . . to qualify as a fair use, a new work generally must alter the original with 'new expression, meaning, or message.'") (quoting *Campbell,* 510 U.S. at 579).
[10] "Jon Stewart returns to 'Daily Show' to support 9/11 first responders," CBS News (Dec. 8, 2015) (*available at* http://www.cbsnews.com/news/jon-stewart-returns-to-the-daily-show-advocates-for-911-first-responders-zadroga-act/) (accessed Dec. 9, 2015).

*The Post's transformatively different purpose provides justification*.   Plaintiff next argues that "the difference in purposes must be significant." (Opp. 10.)  But neither of the cases it cites supports the notion that the difference must be "significant."  All that is required is that the secondary use be "transformatively different from the original expressive purpose."  *Bill Graham*, 448 F.3d at 609.  Indeed, Plaintiff fails to address the showing in the Memo that some overlap in purpose will still qualify as transformative, especially when the secondary use involves using the original work as a historical artifact.  (Memo 32-33.)

Here, the differences in purpose are more than sufficient.  In the Opp., Plaintiff never takes a clear position on what the original purpose of the Work was.  The closest it comes is to assert that the Work is today an "iconic representation of heroism" (Opp. 11), and that it has a "patriotic meaning" (*id*. 2).  But as Franklin has long acknowledged, ████████████ ████████████████████████████████████████████████████ (Boyer Decl., Ex. 1, at 204:15-23 ("████████████████████████████████████████ ████████████████████████████████").)  Further, it defies logic to assert that breaking news photojournalism is the same thing as using a meme for commentary and to participate in ritualistic commemoration on social media almost 15 years later.[11]

Plaintiff's argument that purportedly limiting protection for news photos to uses involving "news of the day" would impair incentives to create (Opp. 12) is inconsistent with precedent and contradicts Franklin's admission that he did not intend to license the Work when he created it.  (Boyer Decl., Ex. 3 at 65:5-13, 15-17.)  This is not a case like *Fitzgerald*, 491 F. Supp. 2d at 188, where "unrestricted use would likely dry up the source." (Opp. 12.)  The

---

[11]Accordingly, this is not a case like *Gaylord v. United States*, 595 F.3d 1364 (Fed. Cir. 2010), where the plaintiff created a sculpture and the defendant made a commemorative stamp from a photograph of it.  Plaintiff's argument that a photo will always "remind" people of what it depicts cannot be squared with Circuit case law involving works like historical, commemorative coffee table books and biographies with visual content depicting events from the subject's past, which  have been found to serve a different purpose than the original.  (Memo 29-30.)

internet is saturated with the Work and the Meme, yet Plaintiff continues to license.  With this evidence, Plaintiff cannot claim that widespread use impairs its incentives.

  ***Plaintiff admits that the Meme altered the visual appearance of the Work***.  Plaintiff claims that "slight alterations" are not sufficient, again citing *Fitzgerald*, even though it is not instructive on this factor.  (Opp. 10.)  But Plaintiff does not set forth any evidence refuting Dr. Sinnreich's expert testimony that these visual alterations were substantial.  Nor does Plaintiff address Fox News' showing that these alterations were significant also because they employed the Work in a meme, which expert testimony establishes caused it to serve distinct creative and communicative objectives from the original.  Such distinct objectives are transformative.  (*See* Memo 30-31.)  Even if the Meme's visual alterations were not, standing alone, sufficient to transform the original Work, they surely provide additional weight for fair use.

  ***A "new audience" is not required***.  *Campbell* does not contain any reference to "new audiences" at all, much less a statement that they are required.  *See* 510 U.S. at 588.  The notion that the Baier Facebook Page, a fan page for a D.C.-based television anchor in 2014, does not reach a "new audience" from a 2001 print edition of the *Record*, in New Jersey, or even from different websites at other times, is not supported by any evidence and defies common sense.

  iii. Fox News' For-Profit Status Does Not Weigh Against Fair Use

  Even accepting NJMG's arguments about Fox News' purported commercial purpose at face value (which they should not be, as discussed *infra*), this is not the type of commerciality that weighs against fair use to any significant degree.  Fox News' purported promotional use is First Amendment speech on a matter of public concern that is incidental to other expressive speech.  *See Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 115 (2d Cir. 1997) (movie ad fair because incidental to expressive work); *Consumers Union of United States, Inc. v. Gen. Sig. Corp.*, 724 F.2d 1044, 1049-50 (2d Cir. 1983) (vacuum ad fair even though "undoubtedly

commercial" because it informed the public).  Plaintiff's Opp. does not even address either one of these binding Second Circuit opinions, much less Fox News' arguments as to why they are fatal to its assertion that the purported commerciality of the Post weighs against fair use.

NJMG does not contest that Fox News made absolutely no money directly from the Post or the Baier Facebook Page.  (Counter 56.1 ¶¶ 71, 72.)  Its arguments about the alleged record evidence purportedly showing a commercial motive (*i.e.*, that Fox News makes money on advertising and uses social media to promote its news reporting programming and webpages) amount to nothing more than alleging that Fox News is a for-profit enterprise, which is not sufficient to substantially weigh against fair use.  *See Swatch*, 756 F.3d at 83.[12]  Indeed, the Second Circuit's opinions finding fair uses by Google, Inc., Bloomberg L.P., Jeff Koons, and Richard Prince involved some of the most profitable corporations and artists in the country.

Further, Plaintiff does not respond to the showing that *On Davis*, 246 F.3d at 174-75, does not apply.  NJMG does not claim that the Post itself was an advertisement.  (*See id.*)  It essentially admits that the use is at least "minimally transformative" (Opp. 1), thus, *On Davis*— which only applies for ads with "nothing transformative"—does not weigh against fair use, particularly because Fox News' use relates to a matter of public concern.  (*See* Memo 34.)

Finally, Plaintiff cannot refute Ricalde's denial of a profit motive by saying it does not believe her testimony.  *Gottlieb*, 84 F.3d at 518 (aspersions on credibility do not create an issue

---

[12] NJMG's evidence also simply is not probative of Fox News' intent for the Post.  *Anderson v. Liberty Lobby*, 477 U.S. 1986, 249-50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

Similarly, Plaintiff's citations to a filing in another case indicate only that Fox News' "goal" for its online and digital presence is "to provide its audience with a richer news experience" and increase overall viewership by making content "accessible on platforms other than its cable channels," that Fox News makes advertising revenue, and that people can link to Fox News web content on social media.  (Dunnegan Decl., Ex. G, ¶¶ 93-94, 107, 129-31.)  Plaintiff's only other citations are to the Pirro and Baier Facebook Pages.

of fact).  Whether Ricalde was acting "purely" for expressive or commercial purposes is a false

dichotomy.  Her purpose could be both, and there would be no issue of fact—Factor One would

still favor fair use.  *Google Books*, 804 F.3d at 218-19 ("nearly all" of the preamble uses "are

generally conducted for profit in this country") (citation omitted).

### C.      Factors Two and Three Also Favor Fair Use

Fox News stands on its arguments on Factor Two; *Google Books* did not overturn

longstanding law that previously published, factual works favor fair use.  On Factor Three,

Plaintiff misinterprets Ricalde's testimony.  (Dunnegan Decl., Ex. D at 138-39 (███████████

████████████████████████████████████████████████████).)  This vague

response admits nothing.  Further, NJMG argues the wrong standard.  *Cariou*, 714 F.3d at 710

(Factor Three "does not require" taking "no more than is necessary").

### CONCLUSION

Plaintiff does not dispute that courts evaluating uses that are close to the fair-use line

should err on the side of preserving the "breathing room" necessary for free expression.  (Memo

15-16.)  A finding of fair use here would provide exactly that valuable, and needed, protection.

For all of the above reasons, Fox News' use was fair.  Its Motion should be granted.

Dated: New York, New York        HOGAN LOVELLS US LLP
      December 11, 2015

                    By:      /s/ Dori Ann Hanswirth
                    Dori Ann Hanswirth
                    Theresa House
                    Nathaniel S. Boyer
                    Benjamin A. Fleming
                    Patsy C. Wilson
                    875 Third Avenue
                    New York, New York 10022
                    tel: (212) 918-3000
                    Email: dori.hanswirth@hoganlovells.com
                    *Attorneys for Defendant*